**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  **CV 12-01468 SJO (AJWx)**          **DATE:**  **March 28, 2012**

**TITLE:**      **Martin Sheen, et al. v. Screen Actors Guild, et al.**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                  Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** [Docket No. 11];
**ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FOURTH CAUSE OF
ACTION** [Docket No. 12]; **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION** [Docket No. 13]

This matter is before the Court on three separate motions filed February 27, 2012: Defendants'
Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD"); Individual Defendants' Special
Motion to Strike Plaintiffs' Fourth Cause of Action ("MTS"); and Plaintiffs' Motion for Preliminary
Injunction ("MPI").  (*See generally* MTD, ECF No. 11; MTS, ECF No. 12; MPI, ECF No. 13.)
Plaintiffs are: (1) Martin Sheen; (2) Edward Asner; (3) Ed Harris; (4) Valerie Harper; (5) Clancy
Brown; (6) James Remar; (7) George Coe; (8) Diane Ladd; (9) Lainie Kazan; (10) Nichelle Nichols;
(11) Renee Aubry; (12) Jane Austin; (13) Erick Avari; (14) Steven Barr; (15) Sara Barrett;
(16) Terrance Beasor; (17) Michael Bell; (18) Warren Berlinger; (19) Joe Bologna; (20) Ralph
Brennen; (21) Jude Ciccolella; (22) Cynthia Lea Clark; (23) David Clennon; (24) Joe D'Angerio;
(25) Patricia M. D'Arbanville; (26) Dick Gautier; (27) Dorothy Goulah; (28) Marty Grey; (29) Sumi
Haru; (30) Angel Harper; (31) Basil Hoffman; (32) David Huddleston; (33) Anne-Marie Johnson;
(34) David Jolliffe; (35) Kerrie Keane; (36) Peter Kwong; (37) Kurt Lott; (38) Barbara Luna;
(39) Eric Lutes; (40) Stephen Macht; (41) Michael McConnohie; (42) Peter Antico; (43) Susan
McNabb; (44) Phyllis Timbes; (45) Marguerite Moreau; (46) Traci Murray; (47) Nicole Mandich;
(48) Larry Newman; (49) Barbara Niven; (50) Kathleen Nolan; (51) Jack Ong; (52) Peggy Lane
O'Rourke; (53) Leslie Parrish; (54) Scott Pierce; (55) Robin Riker; (56) Stephanie Rose; (57) Alan
Rosenberg; (58) Alan Ruck; (59) Wendy Schaal; (60) Tasha Schaal; (61) Nancy Sinatra;
(62) Cynthia Steel; (63) Renee Taylor; (64) Malachi Throne; (65) Beverly Todd; (66) Jessica
Wright; (67) Momo Yashimo; and (68) Alexandra Castro (collectively, "Plaintiffs").  Defendants are
the Screen Actors Guild ("SAG" or the "Union") and six Individual Defendants: (1) David White;
(2) Ken Howard; (3) Amy Aquino; (4) Ned Vaughn; (5) Mike Hodge; and (6) David Hartley-Margolin

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>          **DATE:** <u>March 28, 2012</u>

(collectively, "Individual Defendants"; collectively with SAG, "Defendants").  (*See generally* First Am. Compl. ("FAC"), Mar. 1, 2012, ECF No. 32.)[1]

On March 5, 2012, Plaintiffs filed their Oppositions to Defendants' Motions ("MTD Opposition" and "MTS Opposition").  (*See* MTD Opp'n, ECF No. 41; MTS Opp'n, ECF No. 40.)  Also on March 5, 2012, Individual Defendants and the Union filed separate Oppositions to Plaintiffs' MPI[2] ("Individual Defendants' MPI Opposition" and "SAG MPI Opposition").  (*See generally* Ind. Defs.' MPI Opp'n, ECF No. 42; SAG MPI Opp'n, ECF No. 33.)  On March 12, 2012, Plaintiffs, Individual Defendants, and SAG filed their respective Replies ("MPI Reply to Individual Defendants," "MPI Reply to SAG," "Individual Defendants' MTD Reply," "SAG MTD Reply," "MTS Reply").  (*See generally* MPI Reply to Ind. Defs., ECF No. 61; MPI Reply to SAG, ECF No. 62; Ind. Defs.' MTD Reply, ECF No. 70; SAG MTD Reply, ECF No. 60; MTS Reply, ECF No. 71.)

The Court found these matters appropriate for disposition without oral argument and vacated the hearing scheduled for March 26, 2012.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction, **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, and **DENIES** Individual Defendants' Motion to Strike.

///

///

---

[1]  On February 27, 2012, Plaintiffs filed an Ex Parte Application requesting leave to amend their Complaint.  (*See generally* Ex Parte Application, ECF No. 5.)  The Motions currently before the Court were filed before the Court granted Plaintiffs leave to amend and before the FAC was filed.  A superceding amendment of the operative pleadings would normally render a motion to dismiss or strike moot because the complaint sought to be dismissed or stricken no longer governs the litigation.  Here, however, all three Motions anticipate the possibility that the FAC would be the operative complaint by the time the Court issued a decision.  In light of the short timeline surrounding the issues in this case and the parties' continued diligence in briefing the instant Motions, the Court concludes that the parties have consented to disposition of the Motions as applied to the FAC.

[2]  The Union and Individual Defendants were initially represented by the same counsel and filed their MTD jointly.  However, the Union is not a party to Individual Defendants' MTS.  Individual Defendants have since obtained independent representation and are no longer being represented by counsel for the Union.  (*See* Orders Granting Reqs. to Substitute Att'y, Mar. 8, 2012, ECF Nos. 54-59.)  As a result, there are two oppositions to Plaintiffs' MPI and two replies in support of Defendants' joint MTD.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-01468 SJO (AJWx)          DATE:  March 28, 2012**

I.      FACTUAL AND PROCEDURAL BACKGROUND

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:  CV 12-01468 SJO (AJWx)          DATE: March 28, 2012**


Defendant SAG is a labor organization within the meaning of 29 U.S.C. § 402 whose membership comprises over 120,000 professional actors (the "Membership").  (FAC ¶¶ 2, 12.)  This case concerns the proposed merger of SAG with another entertainment-industry union, the American Federation of Television and Radio Artists ("AFTRA").  On March 1, 2012, Plaintiffs filed their FAC, seeking declaratory and injunctive relief.  (*See generally* FAC.)  Plaintiffs are sixty-eight members of SAG, six of whom currently serve as directors on SAG's National Board of Directors (the "Board").[3]  (FAC Ex. A.)  With the exception of Defendant David White, who is SAG's current National Executive Director, the Individual Defendants also serve as directors on the Board.  (FAC ¶ 2.)

Plaintiffs' FAC alleges the following facts.  SAG is governed by its constitution (the "SAG Constitution"), bylaws, and board resolutions.  (*See generally* FAC.)  In 1981, the then-seated Board added Appendix I to the SAG Constitution and bylaws.  (FAC ¶ 23.)  Appendix I recognized that a merger between SAG and AFTRA could have an adverse impact on SAG's Membership.  (FAC ¶ 23.)  According to Plaintiffs' FAC, provisions of Appendix I allegedly require that studies be conducted to determine "what, if any merger plan can be achieved which will satisfy the requirements of law and the protection of all eligible members against loss of benefits presently or in the future."  (FAC ¶ 21.)

Since 1981, "the issue of merger has arisen numerous times."  (FAC ¶ 23.)  Most recently, in 2003, the Membership rejected a proposed merger between SAG and AFTRA.  (FAC ¶ 24.)  Plaintiffs allege that the 2003 merger proposal was rejected because a study (the "Mercer Report") "confirmed the worst fears" of the Membership: "merging with AFTRA could result in a diminution in benefits and increased administrative costs."  (FAC ¶ 23.)  Following the 2003 rejection, the Board passed a formal resolution (the "2003 Board Resolution") that Plaintiffs assert "recognized and reaffirmed the critical need for such due diligence prior to any future merger vote."  (FAC ¶ 24.)  Specifically, Plaintiffs allege that in 2003, the Board formally agreed to "'take all reasonable steps to explore' whether a merger would enhance the security of pension benefits; be cost efficient, practical and maximize health benefits; and explore the basis upon which" SAG and AFTRA could merge.  (FAC ¶ 24.)

On February 27, 2012 - notwithstanding SAG's history - Defendants called for the Membership to vote on a proposed merger between SAG and AFTRA.  (FAC ¶¶ 25, 45.)  Before the proposed merger was put to the Membership for a vote, "substantial efforts were made [on] behalf of Plaintiffs to understand whether a legitimate basis existed to support or oppose the prospective merger."  (FAC ¶ 30.)  When the Board met on October 23, 2011, Plaintiffs requested that an impact study as to pension and health benefits be conducted.  (FAC ¶ 32.)  The Board refused

---

[3] The Plaintiffs currently serving on the Board are Martin Sheen, Ed Harris, Valerie Harper, Joe D'Angerio, Anne-Marie Johnson, and David Jolliffe.  (FAC Ex. A.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>        **DATE:** <u>March 28, 2012</u>

Plaintiffs' request, allegedly claiming that it was "illegal" to conduct such an impact study until after the merger was ratified.  (FAC ¶ 32.)  Later, the Board allegedly switched its position on the issue, claiming it would be too costly to conduct such an impact study.  (FAC ¶ 33.)

Plaintiffs aver that the Board never responded when Plaintiffs offered to conduct the impact study at their own expense.  (FAC ¶ 33.)  On January 4, 2012, counsel for Plaintiffs sent Defendants a letter addressing Plaintiffs' concerns about the proposed merger and informing Defendants of their fiduciary duties under 29 U.S.C. § 501.  (*See* FAC ¶ 30.)  At this time Plaintiffs also requested "statistical information necessary for qualified professionals to conduct an actuarial impact study" so that Plaintiffs might conduct their own study to confirm how the proposed merger would impact the Membership.  (FAC ¶¶ 30, 31.)  Defendants denied this request.  (FAC ¶ 31.)
On January 28, 2012, the Board voted to approve the merger and subsequently submitted the proposal to the Membership for a vote.  (FAC ¶ 43.)  The Board called for this vote by the Membership, notwithstanding Defendants' failure to address critical issues - e,g, how the merger would impact health benefits, pension plans, negotiating strength, and "split contribution" issues[4] - about the proposed merger as required by the SAG Constitution and 2003 Board Resolution. (FAC ¶¶ 32, 38-41.)  By "intentionally and knowingly" breaching SAG's governing documents, Defendants are denying Plaintiffs their right to a meaningful vote and are breaching their fiduciary duties.  (*See* FAC ¶¶ 54, 63.)  Plaintiffs aver that Defendants' actions are contrary to law and give rise to the following causes of action: (1) violation of section 101(a) of the Labor Management Reporting and Disclosures Act ("LMRDA"), 29 U.S.C. § 411; (2) violation of 29 U.S.C. § 501; (3) violation of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and (4) breach of California common law fiduciary duties.

II.    <u>DISCUSSION</u>

    A.    <u>Motion to Dismiss</u>

Defendants move to dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.

---

[4]  The parties agree that the "split-contribution" situation is an ongoing problem facing actors who are members of both AFTRA and SAG.  Both unions require that members earn a certain minimum annual income under union contracts to qualify for pension benefits. (*See* FAC ¶ 40.)  An actor whose annual income is split between SAG and AFTRA contracts could earn enough money as a professional actor in the aggregate to exceed either union's minimum, but still not qualify for benefits because the SAG contracts do not count toward the AFTRA minimum, and vice versa.  (FAC ¶ 40.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>          **DATE:** <u>March 28, 2012</u>

1.   <u>Legal Standard</u>

   a.   <u>Rule 12(b)(1)</u>

"It is a fundamental precept that federal courts are courts of limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation marks omitted).

A motion to dismiss on jurisdictional grounds may be "either facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A court evaluating a factual challenge to jurisdiction "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment . . . [and] need not presume the truthfulness of the plaintiffs' allegations."  *White*, 227 F.3d at 1242 (internal citations omitted).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

   b.   <u>Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Rule 8(a).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although the pleader is not required to plead "detailed factual allegations" under Rule 8(a), the standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id.* (internal quotation marks omitted).

The Ninth Circuit views 12(b)(6) motions with disfavor.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th. Cir. 1997).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  Plausibility is not synonymous with possibility.  *See id.* (citing *Twombly*, 550 U.S. at 556).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 12-01468 SJO (AJWx)**          DATE: **March 28, 2012**

The plausibility standard requires more than a possibility that the defendant acted contrary to law. *Id*. Although when considering a motion to dismiss the Court must construe all facts in the light most favorable to the plaintiff, the Court does not afford such deference to legal conclusions that are "couched" as factual allegations. *See id*. at 1949-50 (internal quotation marks omitted). Where a complaint pleads facts "enough to raise a right to relief above the speculative level," a court may not dismiss the complaint under 12(b)(6). *See Twombly*, 550 U.S. at 555.

#### 2.   Review of Defendants' Attack on Subject Matter Jurisdiction

Defendants raise both a facial and a factual challenge to subject matter jurisdiction.  In support of their factual challenge, Defendants have provided numerous affidavits and other extrinsic evidence to show that the SAG National Executive Committee ("Committee") and Board complied with all of the statutory and SAG constitutional duties that form the basis of Plaintiffs' claims. Plaintiffs object to Defendants' evidence in support of their MTD and argue that "if the Court elects to consider these 'facts' volunteered outside the FAC, . . . the [MTD] must be treated as one for summary judgment . . . [and] must be denied if any material fact is in dispute."  (MTD Opp'n 14.)

The Ninth Circuit has held that "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters*., 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks omitted).  Where, as here,  "a statute provides that basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief," the jurisdictional question may not be addressed on a motion to dismiss unless the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id*. At 139-40.

Defendants' evidence contests the veracity of Plaintiffs' allegations going to the heart of the merits of Plaintiffs' LMRDA and LMRA claims.  The Court's authority to review Defendants' factual challenge to subject matter jurisdiction under Rule 12(b)(1) is thus limited to determination of whether Plaintiffs' claims are wholly insubstantial; all other factual determinations must be reserved until after the parties have had opportunity to develop the record.  Accordingly, the Court will accept as true the allegations set forth in Plaintiffs' FAC to address Defendants' facial attack under 12(b)(1) and will not address Defendants' factual attack at this time.

#### 3.   Violation of 29 U.S.C. § 411

Defendants move to dismiss Plaintiffs' claim for violation of section 101(a)(1) of the LMRDA, 29 U.S.C. § 411.  (MTD 9-12.)  Plaintiffs allege that Defendants, by refusing to conduct an actuarial study, have denied the Membership its right to cast a meaningful vote and have deprived Plaintiffs of equal voting rights and freedom of speech and assembly.  (FAC ¶¶ 52-54.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 12-01468 SJO (AJWx)          **DATE:** March 28, 2012

Title I of the LMRDA establishes a Bill of Rights of Members of Labor Organizations ("Bill of Rights"). 29 U.S.C. § 411(a)(1). Federal district courts have exclusive jurisdiction over civil actions for infringement of rights secured by the LMRDA Bill of Rights. *Id.* § 412. Section 101(a)(1) of Title I provides in pertinent part: "Every member of a labor organization shall have equal rights and privileges within such organization . . . to vote in elections or referendums of the labor organization . . . subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). Any provision of a union's constitution or bylaws "which is inconsistent with the provisions of [section 101(a)(1)] shall be of no force or effect." *Id.* § 411(b).

"Section 101(a)(1) is an anti-discrimination provision, pure and simple. To state a claim under section 101(a)(1), a union member **must** allege a denial of rights accorded to other members." *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1473 (9th Cir. 1992) (emphasis added); *see also Parish v. Legion*, 450 F.2d 821, 828 (9th Cir. 1971). The LMRDA's emphasis is to protect equal voting rights among the rank-and-file union members. *Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547*, 587 F.2d 1379, 1384-85 (9th Cir. 1978). Section 101(a)(1) does not grant substantive voting rights, but "[r]ather, the provision requires *equal* voting rights: it requires that rights given to some members must be given to all, subject only to reasonable rules or regulations." *Sergeant v. Inlandboatmen's Union of the Pac.*, 346 F.3d 1196, 1201 (9th Cir. 2003). Unless the plaintiff union members allege **discriminatory** denial of voting rights, the district court is without jurisdiction under the LMRDA to provide relief for the alleged section 101(a)(1) violation. *Kapau v. Yamamoto*, 622 F.2d 449, 453 (9th Cir. 1980); *Stelling*, 587 F.2d at 1384 ("Jurisdiction under [section 101(a)(1)] exists only when such discrimination has been alleged.").

Plaintiffs have failed to allege facts sufficient to state a claim that Defendants violated Plaintiffs' equal rights under section 101(a)(1). Plaintiffs do not allege that Defendants have discriminated against them or a particular class of members. To the contrary, Plaintiffs unequivocally claim that Defendants have deprived **every** SAG member of the right to a meaningful vote. (*See* FAC ¶ 54.) Accepting this allegation as true, even viewed in the light most favorable to Plaintiffs, the FAC cannot be construed as alleging discrimination. *Cf. Calhoon v. Harvey*, 379 U.S. 134, 139 (1964) (finding that a union rule limiting nominations in elections of union officials "was not a discrimination against [plaintiffs'] right to nominate, since the same qualifications were required equally of all members"). "Whether or not these members were treated properly or fairly, they were treated equally and there is no [section] 101 claim." *Case v. IBEW*, 438 F. Supp. 856, 859 (D. Alaska 1977). Thus, on its face, Plaintiffs' claim for violation of equal voting rights falls outside this Court's jurisdiction to grant relief for violation of rights secured by section 101(a)(1).[5]

---

[5] The Court is unpersuaded by Plaintiffs' argument that *Blanchard v. Johnson*, 388 F. Supp. 208 (N.D. Ohio 1975), recognizes a cause of action under 101(a)(1) for uniform deprivation of the "right to a meaningful vote." (*See* Opp'n to MTD 7 (citing *Blanchard*, 388 F. Supp. at 213-14).) The *Blanchard* court did not find a violation of section 101(a)(1).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>         **DATE:** <u>March 28, 2012</u>

Plaintiffs' claim under section 101(a)(1) that the Union is depriving the Membership of the information necessary to cast a meaningful vote is merely an allegation that the Union violated its own rules.  As the *Ackley* court held:

> Even if section 101(a) of the LMRDA is construed as including a full information requirement when membership votes are required by other provisions of the LMRDA, we see no justification for extending that rule to membership votes that, under the LMRDA, need not be conducted at all. It is the union's rules, not the LMRDA, that determine whether a contract ratification vote must be held.  Therefore, it is the union's rules, not federal law, to which we must look when determining how the vote must be conducted, including any questions regarding what, if any, information must be afforded to union members during the contract ratification process.  In short, it is the breach of the union's internal rules that must serve as the basis for any complaint that insufficient information was provided to the membership prior to or at the time of ratification of a contract.  Section 101(a) of the LMRDA affords no remedy for such a breach.

*Ackley*, 958 F.2d at 1476.

Plaintiffs assert that Defendants are depriving them of access to information necessary to make an informed vote.  (FAC ¶ 44.)  Plaintiffs claim they suffered discrimination because they were denied the ability to conduct their own study regarding the merging of the two health plans.  (FAC ¶¶ 31, 33).  As articulated in *Ackley*, the union rules dictate how the vote is conducted.  *Ackley*, 958 F.2d at 1476.  Yet, the SAG Constitution does not afford the Membership the right to circumvent the constitutionally mandated voting channels by performing an independent study.  (*See* SAG Const. Art. XVII.)  Moreover, Plaintiffs have not asserted a denial of voting rights in comparison with other union members.  (*See generally* FAC.)  Plaintiffs have not alleged that other members or class of members were granted permission to study the health plans when Defendants rejected their overtures to perform a study.  *See Stelling*, 587 F.2d at 1384-85.  Therefore, without allegations that Plaintiffs were specifically discriminated against in comparison to other rank-and-file members, Plaintiffs have failed to state a claim for violation of equal voting rights.

---

Rather, the court examined the policy underlying the LMRDA that prompted Congress to guarantee equal voting rights and found an implied fiduciary duty under § 501 (not § 411) to inform members on matters submitted for membership vote.  *See id.* at 214.  *Blanchard* does not expand the scope of section 101(a)(1) protection and, in any event, is not binding on this Court.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-01468 SJO (AJWx)          DATE: March 28, 2012**

The reasonableness of the information requirements set forth in the SAG Constitution, and whether Defendants complied with those requirements, are not issues properly analyzed under section 101(a)(1).  *See id*; *Stelling*, 587 F.2d at 1385 ("'[W]hether the voting requirements set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to vote on an equal basis given by [section] 101(a)(1) was violated.'" (quoting *Calhoon*, 379 U.S. at 139) (alterations omitted)); *cf. Ackley*, 958 F.2d at 1474 ("The question whether the information provided was biased toward a particular outcome is irrelevant for purposes of section 101(a)(1).  Section 101(a)(1) prohibits discrimination against people, not against ideas.").

Accordingly, the Court GRANTS Defendants' MTD as to Plaintiffs' first cause of action for violation of rights secured by section 101(a).

> **4.     Violation of 29 U.S.C. § 501**

Section 501 governs the fiduciary responsibilities of officers of labor organizations.  29 U.S.C. § 501.  Under § 501(a):

> [t]he officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person . . . to hold [the organization's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, [and] to refrain from dealing with such organization as an adverse party.

29 U.S.C. § 501(a).  The Ninth Circuit broadly defines "fiduciary duty" under § 501.  *Stelling*, 587 F.2d at 1386.  Under this broad interpretation union officials owe a fiduciary duty "even when no monetary interest of the union is involved."  *Id.* (finding a breach of fiduciary duty where union officials denied the membership of the union their constitutionally guaranteed right to vote on a collective bargaining agreement).

"Section 501 serves as a means for courts to intervene in union affairs when a fiduciary breach is demonstrated," such as when union officials do not comply with the organization's constitution or other operating agreements.  *Id.* at 1389.  A court's ability to intervene is tempered by the "well-established federal policy of avoiding unnecessary interference in the internal affairs of unions." *Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters*, 82 F.3d 303, 306 (9th Cir. 1996) (noting that "[c]ourts must be careful not to undermine union self-government").  Absent a demonstration

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-01468 SJO (AJWx)</u>          **DATE:** <u>March 28, 2012</u>

of bad faith, where union officials reasonably interpret the organization's constitution, "the courts should not disturb the union officials' interpretation." *Stelling*, 587 F.2d at 1389.

Plaintiffs allege that the Individual Defendants, as Board members of SAG, have breached the fiduciary duty owed to "the membership of SAG and the union itself" under 29 U.S.C. § 501. (FAC ¶¶ 58-59.)  Plaintiffs claim that Defendants are "intentionally and knowingly" disregarding SAG's constitution, bylaws, and board resolutions - and thus, are breaching their fiduciary duty - by: (1) "deny[ing] the SAG membership its right to a meaningful vote" by "refusing to conduct an actuarial study prior to the merger vote" as required by SAG's governing documents; (2) "knowingly submitting an unsupported plan for merger for a vote of the membership"; and (3) expending SAG funds by initiating a "multi-million dollar campaign for merger."  (FAC ¶¶ 60-63.)

The parties agree the SAG Constitution expressly entitles the Membership to vote on all mergers and requires the written assent of sixty percent of the Membership to ratify a merger.  (Decl. of David White in Supp. of MTD ("White Decl.") Ex. A ("SAG Const.") Art. XVII § 3, ECF No. 14.)  Although the LMRDA does not mandate a merger vote, the SAG Constitution does.  Once the right to vote is bestowed upon the members, that vote must be a meaningful vote.  *See Blanchard*, 388 F. Supp. at 212.

Plaintiffs allege that Defendants have engaged in "misrepresentations and omissions [that] are calculated and knowingly false."  (FAC ¶ 29.)  Plaintiffs proffer that seven law firms, employed by Defendants, have "disseminated series of letters opining the legality of mergers."  (FAC ¶¶ 25-26.)  Although the FAC does not explicitly label the "series of letters," the parties commonly refer to them as the Feasibility Review.  Defendants counter that Members will receive all pertinent documents prior to voting, including an opposition statement drafted by Plaintiffs, hereinafter referred to as the "Voter Information Packet."  (MTD 9.)  Under Rule 12(b)(6),  review is generally limited to the contents of the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "On a motion to dismiss, [the Court] may consider materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The Voter Information Packet, however, is not mentioned in Plaintiffs' FAC, and thus the Court may not consider it for purposes of deciding Defendants' MTD.  (*See* White Decl. Ex. B ("Voter Info. Packet") 15.) .

While *Ackley* does mandate that a "union's internal rules . . . must serve as the basis for any complaint that insufficient information was provided to the membership," the union as a fiduciary may not intentionally mislead union members in a constitutionally required vote.  *See Ackley*, 958 F.2d at 1476; *Blanchard*, 388 F. Supp. at 212.  Plaintiffs allege that the Membership is receiving materials that are "purported to represent the entire agreement."  Specifically, Plaintiffs question the accuracy of the information because they are not receiving "full or fair disclosures" about the proposed merger.  (FAC ¶¶ 28, 42.)  Although a meaningful vote may become compromised if the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-01468 SJO (AJWx)          DATE: March 28, 2012**

information provided to the Membership is misleading, Defendants are allowed to advocate for a particular vote.  *See Ackley*, 958 F.2d at 1474.

Defendants assert that Paragraph 13(a) of Appendix I only requires the Board to "recommend" an actuarial study and does not mandate that a study actually be conducted.  (MTD 15.) Defendants further contend that although the SAG Constitution does not require a study, Defendants nevertheless conducted the Feasability Review, thereby complying with Plaintiffs' proposed interpretation of Appendix I.  (MTD 15.)  Plaintiffs assert that the Board failed to recommend an actuarial study and Defendants' Feasibility Review does not satisfy the requirements of Appendix I Paragraph 13.  (FAC ¶¶ 26, 68.)

In their Motion to Dismiss, Defendants fail to address the impact of the 2003 Board Resolution. (*See generally* MTD.)  Plaintiffs allege that after the Membership rejected the proposed merger in 2003, the Board passed the 2003 Board Resolution.  Plaintiffs allege that the 2003 Board Resolution requires the Board to "'take all reasonable steps to explore' whether a merger would enhance the security of pension benefits; be cost efficient, practical and maximize health benefits; and explore the basis upon which the SAG and AFTRA plans could be consolidated." (FAC ¶ 24.) Although the 2003 Board Resolution was submitted to the Court as evidence in support of Plaintiffs' MPI, the scope of the review of a Rule 12(b)(6) motion is limited to the contents of the complaint.  *See Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir.1996).  The Court will therefore accept Plaintiffs' allegations as true regarding the contents of the 2003 Board Resolution.

Plaintiffs have alleged that Defendants intentionally ignored this mandate and did not examine the potential effects of merger.  Plaintiffs allege that Defendants' reasons for refusing to conduct or to allow Plaintiffs to conduct a study changed over time and that Defendants wanted to push ahead with merger at all costs.  Plaintiffs essentially claim that Defendants deliberately buried their heads in the sand, refusing to even consider whether merger might not be in the Membership's best interest, and expended large quantities of union funds in the process.  Plaintiffs' allegations, if true, could support a finding that Defendants breached their fiduciary duties to the Membership. Therefore, taking the facts in the light most favorable to Plaintiffs, the FAC asserts sufficient facts to survive Defendants' Motion to Dismiss.  Defendant's Motion to Dismiss Plaintiffs' second claim for violation of 29 U.S.C. § 411(a) is DENIED.

5.     Violation of 29 U.S.C. § 185

Plaintiffs bring their third cause of action under section 301 of the LMRA, 29 U.S.C. § 185, for breach of union contract.  Specifically, Plaintiffs claim that Defendants violated Appendix I to the SAG Constitution and the 2003 Board Resolution by submitting the Merger plan to the Board ,and ultimately to the Membership, without first recommending or conducting a feasability study or allowing time for reasonable scrutiny and dissent.  (FAC ¶ 69.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-01468 SJO (AJWx)          DATE:  March 28, 2012**

Section 301(a) of the LMRA authorizes the federal courts to adjudicate "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations." 29 U.S.C. § 185(a). "A union constitution is considered a contract between the union and its members, and a member or members may sue the union under section 301(a) for breach of that contract." *Ackley*, 958 F.2d at 1476 (citing *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 99-100 (1991)).

It is unclear whether the SAG Constitution is a contract "between any such labor organizations" sufficient to confer federal jurisdiction over this dispute under section 301.  The parties' briefs assume, without explanation, that section 301 permits individual union members to sue their union for any deliberate failure to comply with union constitutional requirements.  Plaintiffs contend that the SAG Constitution and 2003 Board Resolution "are contracts between SAG and its members within the meaning of [section 301]." (FAC ¶ 67.)  In their MTD Opposition, Plaintiffs reiterate this conclusion without citation to authority.  (MTD Opp'n 12.)  Defendants do not contest Plaintiffs' interpretation of section 301, but instead dispute facts going to the merits of the claim, arguing that Appendix I and the 2003 Board Resolution are no longer in effect and that Defendants complied with them in any event.  (*See* MTD 13-15.)

Assuming that the documents in question form a contract within the meaning of section 301, Plaintiffs have stated a claim for breach of contract.  Defendants' contention that Appendix I is no longer in effect relies on facts outside the FAC and is not appropriately considered on a 12(b)(6) motion.  Defendants assert that Paragraph 13(a) of Appendix I only requires the Board to "recommend" an actuarial study and does not mandate that a study actually be conducted.  (MTD 15.)  Defendants further contend that although the SAG Constitution does not require a study, Defendants nevertheless conducted the Feasability Review, thereby complying with even Plaintiffs' proposed interpretation of Appendix I.  (MTD 15.)  Plaintiffs assert that the Board failed to recommend an actuarial study and Defendants' Feasibility Review does not satisfy the requirements of Appendix I Paragraph 13. (FAC ¶¶ 26, 68).

"[A]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials . . . should not be disturbed by the court." *Motion Picture & Videotape Editors Guild, Local 776 v. Int'l Sound Technicians, Local 695*, 800 F.2d 973, 975 (9th Cir. 1986).  "Bad faith can be found on evidence that union officials acted contrary to the [union's] best interest, out of self-interest, or in an unconscionable or outrageous way."  *Teamsters*, 82 F.3d at 306-07. Plaintiffs allege that the SAG Constitution and 2003 Board Resolution required the Committee to recommend a study and the Board to take all reasonable steps to protect SAG members against the loss of benefits.  As discussed, Plaintiffs' allegations could support a finding of bad faith on the part of Defendants.  Plaintiffs also allege that no study was ever recommended or conducted, and that the Board rushed into merger without taking any steps to ensure that Member benefits would be protected.  Defendants' factual arguments to the contrary are insufficient to support dismissal under 12(b)(6).  Defendants' interpretation of the SAG Constitution, and the reasonableness of that interpretation, are factual issues that must be addressed in a motion for summary judgment

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-01468 SJO (AJWx)**          **DATE:  March 28, 2012**

or a trial on the merits.  Plaintiffs have stated a claim for breach of contract under section 301.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' third cause of action for violation of 29 U.S.C. § 185 is DENIED.

> 6.    Breach of California Common Law Fiduciary Duty

Individual Defendants argue that dismissal is appropriate as to Plaintiffs' fourth claim for breach of fiduciary duty pursuant to Rule 12(b)(6) because:

> (1)    Plaintiffs "[cannot] plausibly contend that Defendants' discussion and negotiation of a merger of a union with another union, subject to membership ratification, could conceivably constitute a per se violation of any fiduciary duty" (MTD 16);
>
> (2)    the success of Plaintiffs' fourth claim depends on the success of Plaintiffs' first three claims and since dismissal of Plaintiffs' first three claims is appropriate, it follows that dismissal of Plaintiffs' fourth claim is also appropriate (MTD 16);
>
> (3)    "to the extent that all of the federal causes of action are dismissed, this cause of action based on California law should be dismissed because of lack of federal court jurisdiction" (MTD 16); and
>
> (4)    Plaintiffs' fourth cause of action is the appropriate subject of a motion to strike pursuant to California Code of Civil Procedure section 425.16 (MTD 16).

The Court considers each ground for dismissal.

Individual Defendants' first ground for dismissal of Plaintiffs' fourth cause of action fails because it misstates Plaintiffs' claim.  Plaintiffs do **not** allege that the discussion and negotiation of a merger between SAG and AFTRA gives rise to a **per se** violation of Individual Defendants' fiduciary duty.  (*See generally* FAC.)  Rather, Plaintiffs allege that Individual Defendants violated the common law fiduciary duties owed to the Membership by failing to abide by "the strictures of their own governing documents." (FAC ¶ 74.) According to Plaintiffs, SAG's governing documents require Individual Defendants to recommend studies and "take all reasonable steps to explore" the impact of a merger to protect "eligible members against loss of benefits, presently or in the future." (FAC ¶¶ 21-22, 24.)  Accurately framed, Plaintiffs claim that Individual Defendants' failure to recommend the requisite studies is a breach of their fiduciary duty.  Thus, had Individual Defendants complied with SAG Defendant's governing documents and then engaged in negotiations with AFTRA, Individual Defendants would not have breached their fiduciary duty.  Individual Defendants attempt to circumvent their burden on dismissal by misstating Plaintiffs' claim, and thus dismissal on this basis is inappropriate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.: <u>CV 12-01468 SJO (AJWx)</u>**     **DATE: <u>March 28, 2012</u>**

Individual Defendants' second and third grounds for dismissal of Plaintiffs' fourth cause of action are inapposite.  Defendants assert that the Court must dismiss Plaintiffs' fourth cause of action if the first three causes of action are dismissed.  As discussed above, Plaintiffs have properly stated a claim for breach of fiduciary duty under § 501.  Consequently, the Court retains supplemental jurisdiction over Plaintiffs' California common law claim arising from the same nucleus of operative facts.

Finally, Individual Defendants assert that Plaintiffs' claim for breach of common law fiduciary duty should be dismissed pursuant to Rule 12(b)(6) because it is appropriately the subject of a motion to strike under California Code of Civil Procedure section 425.16 (California's anti-SLAPP Statute). (MTD 16.)  As discussed in the next section, Individual Defendants have failed to show that Plaintiffs' fourth claim should be dismissed under the anti-SLAPP statute.  Accordingly, the Court DENIES Defendants' MTD with respect to Plaintiffs' fourth cause of action for breach of common law fiduciary duty.

      B.    <u>Individual Defendants' Motion to Strike</u>

California's Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, was enacted to curb the increasing number of lawsuits being "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a) ("The Legislature finds and declares that it is in the public interest to encourage continued participation  in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.").  In light of the public policy at stake, section 425.16 requires that courts construe the statute broadly.  *Id.*  Section 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).  State law claims in federal court are subject to the anti-SLAPP statute.  *See, e.g.*, *Roberts v. McAfee, Inc.*, 660 F.3d 1156 (9th Cir. 2011).  The Ninth Circuit has explained:

> [t]he anti-SLAPP statute requires a two-part analysis: (1) the defendant must make a *prima facie* showing that the suit arises from an act in furtherance of the defendant's right of petition or free speech; and (2) once the defendant makes this showing, the burden shifts to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-01468 SJO (AJWx)          DATE: March 28, 2012**

the plaintiff to demonstrate a probability of prevailing on the challenged claims.

*Id.* at 1163 (internal quotation marks omitted); *see also Baharian-Mehr v. Smith*, 117 Cal. Rptr. 3d 153, 158-59 (2010).  With respect to the first prong, as held by the California Supreme Court, "[t]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech."  *Freeman v. Schack*, 64 Cal. Rptr. 3d 867, 873 (2007) (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002)).  If the defendant meets its initial burden with respect to the first prong of the analysis, the court proceeds to consider the second prong.  *Smith*, 117 Cal. Rptr. 3d at 159.  "Conversely, if the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step."  *Id.*

Individual Defendants argue that the Court should strike Plaintiffs' fourth claim because it "directly arises from [Individual Defendants'] free speech advocating in favor of merger."  (MTS 9.)  By petitioning the Court for full and fair disclosure of an actuarial study, Individual Defendants assert that Plaintiffs are demanding that this Court order Individual Defendants to "communicate information to which they object and with which they disagree" in violation of their First Amendment rights.  (MTS 10-11.)

Contrary to Individual Defendants' assertion, Plaintiffs' fourth claim does not arise from Individual Defendants' exercise of free speech.  Plainitffs are not - as alleged by Individual Defendants - "seeking to force [Individual Defendants] to advocate against [their] own views and in favor of Plaintiffs' anti-merger position." (MTS 13.)  Rather, Plaintiffs seek the aid of this Court to ensure that Individual Defendants fulfill their fiduciary duties under California law.  (*See* FAC ¶¶ 72-75.)  Thus, the underlying act giving rise to Plaintiffs' claim is Individual Defendants' breach of fiduciary duty.  Moreover, Plaintiffs expressly state that they are not against merger per se, but only against submitting the merger to a membership vote without sufficient information regarding the impact of the potential merger.  (*See* FAC ¶ 17.)

As articulated by the California Supreme Court, "[t]he critical point is whether the plaintiff's cause of action itself was **based on** an act in furtherance of the defendant's right of petition or free speech."  *Cashman*, 29 Cal. 4th at 78 (emphasis in original).  Again, the gravamen of Plaintiffs' fourth claim is that Individual Defendants "breached their fiduciary duties [] by failing to recommend or conduct studies" before calling for a vote on the merger.  (Opp'n to MTS 5; *see also* FAC ¶ 74.)

Where "'the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, **collateral allusions** to protected activity should **not** subject the cause of action to the anti-SLAPP statute.'"  *Freeman*, 64 Cal. Rptr. 3d at 873 (quoting *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 499 (2003)).  Although Plaintiffs allege that Individual Defendants' pro-merger campaign and propaganda intentionally

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  __CV 12-01468 SJO (AJWx)__          DATE: __March 28, 2012__

"misrepresent the facts" and "conceal[ ] critical information," this is **not** the crux of Plaintiffs' claim. (FAC ¶ 34; *see also* Opp'n to MTS 5.)  Plaintiffs' claim for breach of fiduciary duty exists separate and apart from Individual Defendants' constitutional rights to free speech and petition.  Even if Individual Defendants remained silent and did not otherwise partake in **any** speech  related to the merger, a claim for breach of fiduciary duty would still stand.

Because Plaintiffs' fourth claim arises out of Individual Defendants' alleged breach of fiduciary duty, Individual Defendants fail to satisfy the first prong of the test for a special motion to strike under section 425.16.  Consequently, consideration of the second prong of the anti-SLAPP analysis is unnecessary.  The Court finds that Plaintiffs' fourth claim is not the appropriate subject of a motion to strike under California Code of Civil Procedure section 425.16.  Accordingly, the Court DENIES Individual Defendants' Special Motion to Strike.

      C.     Preliminary Injunction

Having determined that Plaintiffs' second, third, and fourth claims survive Defendants' MTD, the Court now turns to the issue of preliminary injunction.  Plaintiffs seek to enjoin Defendants and their officers, agents, servants, employees, and attorneys from tallying the merger vote or publicly announcing the results of the merger vote until:

> [1] The SAG National Executive Committee has recommended, in conjunction with the development of any merger proposal to be voted upon by the members, all necessary studies required by Appendix I of the SAG Constitution, including an independent study detailing the actuarial effect of any proposed merger of the pension and/or health plans; and

> [2] A truthful and complete disclosure to the members of all aspects of the proposed merger plan, acknowledging its limitations and omissions, including any potential adverse impacts.

(MPI 3.)

          1.     Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks omitted).  The decision to grant a preliminary injunction is committed to the sound discretion of the trial court.  *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  Courts may issue an injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  In *Winter*, the Supreme Court articulated the following test for preliminary injunctions:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>        **DATE:** <u>March 28, 2012</u>

> A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.

*Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20) (alterations in original).  Under an "alternate formulation of the *Winter* test," the Ninth Circuit has held that a court can issue a preliminary injunction where "serious questions go to the merits and a balance of hardships [ ] tips sharply towards the plaintiff . . . so long as the plaintiff also shows the likelihood of irreparable injury and that the injunction is in the public interest."  *Farris v. Seabrook*, 667 F.3d 1051, 1057 (9th Cir. 2012) (internal quotation marks omitted).[6]  "The burden on the moving party is particularly heavy where . . . granting the preliminary injunction would give the movant substantially the same result it would obtain after a trial on the merits."  *City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105, 1111 (C.D. Cal. 2006).

      a.    <u>Likelihood of Success on the Merits</u>

When considering a motion to dismiss, the Court is limited to the contents of the complaint, exhibits submitted with the complaint, and judicially noticed matters.  *United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011).  However, when considering a preliminary injunction, the Court may consider other pertinent information.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

      i.    <u>Deprivation of the Right to a Meaningful Vote</u>

At SAG's expense, the Membership received a series of ratification materials, including: Merger Agreement, proposed Constitution, Plaintiffs' Voter Information Packet, and a SAG Rebuttal to Plaintiffs' Voter Information Packet. (White Decl. ¶ 14.) Plaintiffs' Voter Information Packet openly questions the Feasibility Review and alleges that the Board failed to perform due diligence: "SAG <u>did not request</u> any actuarial study regarding whether a merger would be **financially** safe." (Voter Info. Packet 15.)  Plaintiffs' Voter Information Packet stresses that an actuarial study was not

---

    [6]  Prior to the Supreme Court's ruling in *Winter*, the Ninth Circuit granted preliminary injunctions where a strong likelihood of success on the merits was coupled with a "'possibility'" of irreparable harm.  *See Winter*, 555 U.S. at 22 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 518 U.S. 658, 677 (9th Cir. 2008)).  The *Winter* Court expressly rejected the Ninth Circuit's approach, stating that the "'possibility' standard is too lenient" and confirming that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S. at 22.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-01468 SJO (AJWx)**          **DATE:  March 28, 2012**

conducted in spite of the "express statements in Appendix I to the SAG Constitution, and Board Resolutions." (Voter Info. Packet 15.)  Plaintiffs' Voter Information Packet further addresses more problems, *inter alia*, the bloated bureaucracy, new dues structure, preferential treatment to broadcasters, and the ability for the new SAG-AFTRA to merge with other unions without a membership vote. (Voter Info. Packet 16.)  Although Plaintiffs were limited to one thousand words in drafting their Voter Information Packet, Plaintiffs included the address of a website[7] where voters can seek additional detailed information.  (Voter Info. Packet 17.)

Assuming, *arguendo*, that the Feasibility Review is misleading and would on its own induce the Membership to vote for the merger, Plaintiff's Voter Information Packet negates any misleading effect.  The Voter Information Packet expressly informs the Membership of Plaintiffs' position that the SAG packet is insufficient and misleading.  Although the Membership would potentially not have all the information regarding the extent of the merger, they are not required to know all details before casting a vote.  The Membership is entitled to a meaningful vote, which can be achieved through notice that the information they have been given is incomplete.

Plaintiffs' reliance on *Blanchard* is misplaced.  Unlike in *Blanchard*, where the union purported to provide complete voting materials, here, the Membership has been informed that SAG's referendum packet is potentially incomplete, that Plaintiffs interpret the SAG Constitution to require an impact study prior to merger, and that the Board has not conducted such a study except as a general review.  *See Blanchard*, 388 F. Supp. at 214.  Ultimately, the Membership has sufficient information from which they can draw their own conclusions about the wisdom of merger under the present circumstances.  Although they cannot know the results of an actuarial study that has not been conducted, the Members know enough to decide whether they need more information about the impact of merger on benefits.  Some Members may decide that there are too many unknown variables to vote for merger at this time; others may decide that they are willing to risk the unknown in order to merge the unions quickly.  At the end of the day, the Members are on notice that in-depth studies have not been conducted since 2003, and that is enough to enable a meaningful vote.

In addition, Plaintiffs have not provided evidence of bad faith other than to claim that Defendants were single-mindedly focused on achieving merger at all costs as suggested by their campaign platforms and their cursory dismissal of Plainitffs' requests for reasons that have changed on numerous occasions.  Plaintiffs have not shown that Individual Defendants are acting in their own best interests and to the detriment of SAG Members.  Plaintiffs only argue that Defendants are acting in the interest of AFTRA and ignoring the negative impacts of merger on SAG, but there is nothing in the record to indicate an impermissible motive for Defendants' behavior.  It seems unlikely that Plaintiffs will prevail on the merits of their claim.  Although Defendants' decisions may not be well reasoned, there is no evidence to support bad faith.

---

[7] www.sagaftraminorityreport.com.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   CV 12-01468 SJO (AJWx)         **DATE:**  March 28, 2012


ii.      Failure to Recommend or Conduct a Study

"There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. . . . It would seem self-evident that the interpretation of a union's own constitution represents virtually the ultimate in internal affairs."  *Editors Guild*, 800 F.2d at 975 (internal quotation marks and alterations omitted).  Courts in the Ninth Circuit employ a deferential approach when reviewing a union's interpretation of its own constitution.  "'There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. . . . [A]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the union's rules and regulations, should not be disturbed by the court.'"  *Local 1052 of the United Bhd. of Carpenters v. L.A. Cnty. Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir. 1991) (quoting *Editors Guild*, 800 F.2d at 975) (alterations in original).

Section 13 of Appendix I states:

> The [SAG National Executive Committee and AFTRA National President's Committee] **agree to recommend** that the consolidation of the respective pension plans be studied so that it may ascertained (a) what, if any, merger plan can be achieved which will satisfy the requirements of law and the protection of all eligible members against loss of benefits, presently or in the future; and (b) the willingness of industry trustees to consolidate the plans.

(SAG Const. App. I ¶ 13 (emphasis added).)

The parties dispute whether Appendix I remains authoritative.  Defendants assert that Appendix I is no longer in effect after a March 29, 2008 meeting (SAG MPI Opp'n 3; Ind. Defs.' MPI Opp'n 4), while Plaintiffs contend that it is (MPI 5).  Defendants have submitted the meeting minutes from March 29, 2008, during which the Board allegedly voted to suspend Appendix I.  (Decl. of Duncan Crabtree-Ireland in Supp. of SAG's Opp'n to Pls.' MPI Ex. A ("2008 Minutes"), ECF No. 33.)  Plaintiffs dispute this evidence and argue that the Board was without authority to amend the SAG Constitution.  "In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."  *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir.1986) (internal citations omitted).  Therefore, the Court will work under the assumption that Appendix I is in effect.
Pursuant to the SAG Constitution, the "National Board of Directors has the authority to interpret the terms of this Constitution." (SAG Const. Art. V § 1(H)(1).)  Section 13 only requires that the SAG National Executive Committee recommend a study to the Board.  "Recommend" is not synonymous with "must conduct."  For recommendations, the SAG Constitution does not outline the protocol for making a recommendation, a deadline, or what would transpire if a recommendation was made, but ignored.  (*See generally* SAG Const.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 12-01468 SJO (AJWx)**        **DATE:** **March 28, 2012**

Defendants proffer that they have nevertheless complied with Section 13 by not only recommending, but actually conducting, a study. (*See* SAG MPI Opp'n 8-11.)  Defendants assert that the Feasibility Review, which was included in the voting materials, satisfies Section 13. (*See* SAG MPI Opp'n 8-11.)  Although Plaintiffs assert that no recommendation or study was performed and that the Feasibility Review is inadequate, the Court is reticent to question the Board's interpretation of the SAG Constitution, where the SAG Constitution itself provides that right to the Board. (*See* SAG Const. Art. V § 1(H)(1).)  Again, the SAG Constitution is vague as to what type of study the Board may conduct, specifying only that it should examine potential loss of benefits, presently or in the future, for eligible members. (*See generally* SAG Const.)  Conceivably, the Feasability Review answers such a decree.

Plaintiffs argue that the 2003 Board Resolution is a binding interpretation of Appendix I. The 2003 Board Resolution called upon Plan Trustees to "'take all reasonable steps to explore' whether a merger would enhance the security of pension benefits; be cost efficient, practical and maximize health benefits; and explore the basis upon which the SAG and AFTRA plans could be consolidated." (Decl. of Pl. Anne-Marie Johnson in Supp. of MPI Ex. 4, ECF No. 17.)  Evidence that the Board previously interpreted Appendix I to require a study like the Mercer Report does not render unreasonable Defendants' interpretation of Appendix I to require only a general study like the Feasibility Review.  Absent concrete evidence of bad faith, the Court will not second guess the Board's or the Committee's reasonable interpretation of the SAG Constitution.  Thus, it is unlikely that Plaintiffs will be able to overcome Defendants' argument that the Feasibility Review satisfies the requirements of the SAG governing documents.

Even if Plaintiffs succeed in proving that Defendants acted in bad faith, it is unlikely that Plaintiffs will be able to prove causation, i.e. that Defendants' failure to comply with the governing documents caused the injury that Plaintiffs claim warrants injunctive relief. *See Ackley*, 958 F.2d at 1472. ("[T]o prevail in a misrepresentation case - and thus in a nondisclosure case - plaintiffs must demonstrate 'a causal relationship between the alleged misrepresentations and their injury.'  They must show that (1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands.").

Plaintiffs fail to demonstrate how Defendants' breach of fiduciary duties threatens the status quo, thus warranting a determination on the merits before proceeding with the vote.  *See L.A. Mem'l*, 634 F.2d at 1200 ("A fundamental principle applied in such courts is that the basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.").  Plaintiffs allege that they will suffer harm because after the proposed merger, SAG cannot be restored to its current status.  Even accepting as true that merger of the two unions would be irreversible, Plaintiffs have failed to provide sufficient evidence establishing: (1) how specifically merger would harm the interests of SAG members; (2) that such harm is likely

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 12-01468 SJO (AJWx)**          **DATE:** **March 28, 2012**

to occur if the Membership votes in favor of merger; (3) that such harm outweighs the benefits of merger; and (4) that the Membership is likely to vote in favor of merger.

The SAG Constitution does not require the Board to accept the Committee's recommendation or to conduct a study.  Plaintiffs argue that because Individual Defendants are members of both the Committee and the Board, they "would logically be bound in good faith to accept such a recommendation and conduct the recommended study." (MTD Opp'n 18.)  Plaintiffs contend that it would be disingenuous for Individual Defendants to recommend a study in their role as committee members only to turn around and reject their own recommendation in their role as board members. (MTD Opp'n 18.)  Assuming *arguendo* that Plaintiffs' claim is correct, this alone does not support the ultimate conclusion that a study must be conducted.  Individual Defendants represent only five of the Board's voting directors.  Even discounting their votes, a majority of the Board voted for merger over the dissent of Plaintiff board members.

Furthermore, the record indicates that the Board overwhelmingly approved the merger proposal, with eighty-seven percent of participating directors voting to submit the merger plan to the Membership for a referendum vote. (*See* White Decl. ¶ 11.)  Even if the Court were to grant Plaintiffs the injunction and require the SAG National Executive Committee to recommend a study, the Board would not be bound to accept the recommendation and could elect to proceed without conducting a study.  In that case, the parties would be situated almost exactly as they are now, except that Plaintiffs would be unable to allege a violation of the SAG Constitution.  Put another way, there is a distinct possibility that if the alleged violation had never occurred, and the Committee had recommended a study, the situation would be largely unchanged - the Membership would be voting on merger without the benefit of an actuarial study.  The Court finds that Plaintiffs are unlikely to be able to prove causation and are therefore unlikely to succeed on the merits under any theory.

        b.     Irreparable Harm

Plaintiffs seeking a preliminary injunction "must establish that irreparable harm is *likely*, not just possible."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 20-21).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  Plaintiff must demonstrate "immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Before a preliminary injunction may issue, the court must identify the harm that a preliminary injunction might cause the defendant and weigh it against plaintiff's threatened injury.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("The assignment of weight to particular harms is a matter for district courts to decide.").  Therefore, the question before the court must be ripe for adjudication.  "Ripeness is peculiarly a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009) (alterations and quotations omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-01468 SJO (AJWx)          DATE: March 28, 2012**

Plaintiffs contend they will suffer irreparable harm because Defendants have "muzzl[ed] any dissenting views," making it "impossible for anyone to intelligently cast a merger vote." (MPI 19-20.)  Assuming that the Membership votes in favor of merger as a result of Defendants' alleged deception, Plaintiffs assert that consummation of the proposed merger will diminish "the value of member benefits, union funds, pension benefits, health benefits and member rights," and will result in "exposure to massive, foreseeable liability and inherent conflicts of interest." (FAC ¶ 70.) Reviewing the evidence presented by both parties, the Court finds that Plaintiffs have not established a likelihood of irreparable harm sufficient to warrant a preliminary injunction.

Plaintiffs fail to show how Individual Defendants' breach of fiduciary duty is the cause of the alleged irreparable harm. In order for Individual Defendants' breach of fiduciary duty to cause the irreparable harm, Plaintiffs need to establish that their right to a meaningful vote would have been preserved but for Individual Defendants' breach of fiduciary duty.  However, as the Court explained, the record indicates that Plaintiffs' right to a meaningful vote has not been violated. Thus, notwithstanding Defendants' alleged breach of their fiduciary duties, casting a meaningful vote is still within the Membership's control.  Furthermore, to the extent that Plaintiffs' allegations suggest that the monies expended to promote the proposed merger are unauthorized as a result of Individual Defendants' breach of their fiduciary duties, this harm is not irreparable.  In the Ninth Circuit, "monetary injury is not normally considered irreparable." *L.A. Mem'l*, 634 F.2d at 1202.

Plaintiffs assert that after the union merger takes place, the SAG Board or Appendix I will disappear. (MPI 19-20.)  Without a preliminary injunction, Plaintiffs claim that  their pension, health, contractual, and other benefits will decline. (MPI 19-20.) Although diminution of health and pension benefits is a serious matter, Plaintiffs have failed to demonstrate that such harm is likely to occur upon merger. The SAG-AFTRA Merger Document does not affect the current pension and health plans.  (Decl. of David B. Casselman in Supp. of Opp'n to MTD Ex. 4 ("Merger Agreement") III(C), ECF No. 43.)  The Merger Document expressly states the contrary: "nor shall anything in this Agreement affect, impair or interrupt in any way the continuity and/or effect of existing collective bargaining agreements (including, but not limited to provisions pertaining to health, welfare, insurance, pension, vacation and dues check-off.)."  (Merger Agreement III(C), at 4.)

Plaintiffs offer expert testimony that the merger of the plans is bound to occur in the future, without an opportunity for ratification by the membership.  Conjecture that a proposal to merge the SAG and AFTRA plans will develop does not rise to the level of immediate and likely irreparable harm necessary to justify a preliminary injunction. *See Cottrell*, 632 F.3d at 1131; *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("Injunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-01468 SJO (AJWx)</u>          **DATE:** <u>March 28, 2012</u>

As the Court finds that Plaintiffs are not imminently threatened by irreparable harm, this factor cuts against granting the requested preliminary injunction.

>          c.          <u>Balancing the Equities</u>

"Traditional standards for granting a preliminary injunction impose a duty on the court to balance the interests of all the parties and weigh the damage to each . . . ." *L.A. Mem'l*, 635 F.2d at 1203. In *Winter*, the Court noted that "[t]he policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant when there is reason to believe that the decree will be burdensome." *Winter*, 555 U.S. at 27.

Plaintiffs argue that the equities favor issuance of a preliminary injunction because "[w]ithout a preliminary injunction, all indications are that pension, health, contractual and other [M]ember benefits will decline." (MPI 20.) Individual Defendants assert that Plaintiffs "fail entirely to present an argument that the balance of equities tip in their favor," and thus Plaintiffs have waived argument as to this factor. (Ind. Defs.' MPI Opp'n 11.) The Court cautions Individual Defendants against engaging in such sophistry. Plaintiffs suggest that Individual Defendants' interests would not be undermined by a temporary injunction because SAG and AFTRA have been contemplating a merger for over thirty years. (*See* MPI 3.) This argument cuts both ways, however, because the decades-long back and forth between the two unions indicates how much effort Defendants have expended to come to an agreement and diminishes the likelihood that the Membership will vote in favor of merger. As stated above, the Court finds that Defendants' alleged breach of fiduciary duty does not compromise Plaintiffs' right to a meaningful vote.

As discussed above, it is possible that even an immediate grant of the maximum relief available, should Plaintiffs prevail on the merits, would not materially alter the current trajectory toward merger. In contrast, a preliminary injunction would stop the merger process in its tracks. As a practical matter, whatever the eventual outcome of this case, enjoining the vote currently pending before the Membership on the merger proposal would harm Defendants and benefit Plaintiffs. Defendants would need to expend significant time and resources postponing the merger vote. Even if Plaintiffs eventually lost on the merits, the membership might interpret the preliminary injunction as an indication of Defendants' wrongdoing, lending an imprimatur of authority to Plaintiffs' dissenting position. Plaintiffs will have accomplished something through preliminary injunction that they would probably not be able to achieve through full disposition of the lawsuit. Accordingly, the equities do not favor granting a preliminary injunction.

>          d.          <u>Public Interest</u>

Individual Defendants claim that "Plaintiffs' argument that an injunction is in the public interest is entirely derivative of their arguments on the merits and irreparable harm." (Ind. Defs.' MPI Opp'n 12.) The Court is mindful of the public policy encouraging democratic self-governance in unions. Because the record indicates that the Members have been provided enough information to decide

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 12-01468 SJO (AJWx)</u>          **DATE:** <u>March 28, 2012</u>

whether they would like more information about the impact of merger on benefits, it appears that SAG's democratic process is functioning properly. "Courts must be careful not to undermine union self-government."  *Teamsters*, 82 F.3d at 306.  Judicial interference with the Members' right to decide whether they would like to proceed with merger despite the lack of concrete information about benefits would not serve this public policy, particularly given that the vote will not bring about merger of the health and pension plans.

The Court acknowledges the possibility that merger may lead to eventual change in health and pension benefits, but that alone will not justify an injunction absent a strong showing of success on the merits.  If the merger is approved by the Membership, and the Members eventually see a decrease in benefits, it will be the result of their informed decision to vote for merger without the benefit of an actuarial study.  The democratic process does not always yield the most desirable results for all.  If a remedy exists for dissenters who find themselves in the minority, it may not be found in the federal courts absent a violation of the LMRA or LMRDA.  Based on review of the record, Plaintiffs have not shown that such a violation has occurred.

 The principle of judicial non-interference in union affairs "abides despite any opinion that a judge, or group of judges, might form concerning the wisdom of specific courses of action undertaken by unions and their democratically elected leadership."  *Local No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am.*, 920 F.2d 1047, 1051-52 (1st Cir. 1990) (citing Homer, *The Iliad* bk. XIII ("There is a strength even in the union of very sorry men.")).  Voting in favor of merger may or may not be in the best interest of the majority of Union Members.  But the decision, for better or worse, belongs to the Members - not to Plaintiffs, and certainly not to the Court.

Accordingly, the Court DENIES Plaintiffs' Motion for Preliminary Injunction.

III.     <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss, **DENIES** Individual Defendants' Motion to Strike, and **DENIES** Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.